May proceed morning your honors may it please the court Kelly Lester for petitioners. I'd like to reserve three minutes of my time for rebuttal This case challenges EPA's rule for deca BDE a persistent bioaccumulative and toxic chemical linked to cancer and harm to children's brain development Because of the uniquely harmful attributes of PBT chemicals like deca BDE Tosca requires EPA to adopt all practical measures to reduce exposure to them EPA did not do so Instead its rule for deca BDE largely codifies the status quo and leaves unregulated the very activities from which exposure to deca BDE Is expected to increase I'd like to address two fundamental flaws with EPA's rule First the rule is unlawful because EPA applied the wrong standard in determining what regulations are practicable Rather than evaluating whether a measure is capable of being done within existing constraints EPA rejected regulatory measures based on an open-ended set of discretionary factors including whether EPA deemed a measure reasonable Second even if EPA's interpretation of practical were correct the rule is still unlawful because its exemptions and loopholes are arbitrary and unsupported as A result this court should declare the rule unlawful and remand it to EPA with respect to the first point EPA interprets practical to encompass what it views as reasonable in light of all circumstances Such as the relative costs and benefits of a measure It never identifies limitation to this consideration of reasonableness And it relies on this reading to label a measure impracticable because for example It doesn't view reducing exposures to be worth the costs Allowing EPA to reject measures on reasonableness grounds is incompatible with section 6 of Tosca Section 6 provides two tracks to regulating existing chemicals Section 6a is for nearly all chemicals EPA conducts an assessment called the risk evaluation where it looks at the magnitude of harm associated with specific exposures And then it decides what exposures result in unreasonable risk if it finds unreasonable risk EPA has to eliminate it by regulating those exposures section 6h Addresses a small set of chemicals that EPA rated high for their PBT characteristics Which EPA, I'm sorry, which were a priority concern for Congress It ultimately only regulates five chemicals under this category Here Congress told EPA not to conduct a risk evaluation Just to go straight to risk management So EPA doesn't analyze the harms associated with specific exposure levels Congress instead directed EPA to focus on reducing exposure. It didn't give a discretion to say what exposures are worth reducing EPA's position that it can reject exposure reduction measures because their costs supposedly aren't worth their benefits is Irrational on its face because EPA has no basis to make that judgment Lack of a risk evaluation means that EPA has no analysis of the benefit of reducing specific exposures So it has no basis to say if the cost outweighs the benefit or if it's worth it So EPA's position is simply not contemplated by the statute and therefore it's also not supported by any analysis in the record EPA's interpretation would undermine what Congress was trying to do in section 6h It used language that reflects a stringent standard to reduce exposures to a particularly harmful group of chemicals That were such a priority in legislation that Congress carved out an expedited rulemaking process for them To say that EPA only need to reduce exposures to the extent it deems reasonable Without any limitations on that would vitiate that stringent standard The best reading is not that practical means reasonable But that practical means capable of being done taking into account economic and technological constraints It honors both the dictionary definitions of practicable and the stringent scheme that Congress created So I gather your argument is that the six C2 factors cannot be considered in the 6h analysis. Is that right? That's correct, Your Honor Even if EPA's interpretation of practicable were correct The rule is still unlawful because the exclusions and loopholes are arbitrary and unsupported by substantial evidence I want to focus on three cross-cutting flaws with EPA's rule First EPA took an all-or-nothing approach to regulation Not considering the practicability of targeting only high-priority industries or waste streams for exposure reduction measures For example EPA did not consider disposal restrictions only on waste from specific streams with high levels of DECA-BDE Like electronic waste or waste vehicles and similarly EPA did not consider restricting the concentration of DECA-BDE in recycling streams from these from in recyclable materials from these waste streams And EPA's failure to consider these targeted reductions for recycling and disposal is especially problematic Given that these are precisely the activities from which exposures are expected to increase Second EPA ignored evidence that it would be practical to reduce exposure to DECA-BDE using existing technologies counsel in reading this case was struck by the ability of Congress to come up with so many ambiguous phrases for What the standard here is they were trying to divine what? Practical means along with Achievability feasibility workability reasonableness, and I you're saying we can't consider those together, but I'm not sure what the difference is and historically Courts have given some deference to the agency's interpretation of the statute so they have they have experience with it How do how do we go about analyzing? These this statute in its application here according to your view well a few points your honor I The court no longer needs to give deference to the agency so well we give Skidmore deference I don't think Skidmore deference is appropriate here. There is no particularly Long-standing interpretation that requires deference with respect to this. Yeah, we know Chevron's out, but Skidmore is still alive How do I? Reconcile your claim that in in one section we talked about Practically sent practicable compare those other adjectives in the adverbs in the in the next section, and you're not supposed to consider those together With respect to achievable feasible workable and reasonableness so those are not statutory considerations those are considerations that EPA just used to give meaning to the term practicable and we agree that feasible achievable and workable all do Speak to what is capable of being done, which is the plain meaning of practicable, but what EPA essentially does is Reads reasonable to blow any limitations off of what those first three Factors that it purports to consider would actually entail and so in so doing it says that it doesn't need to address specific exposures because there are supposedly low levels and As I explained that's not a consideration that EPA can actually make under the statute So in your view were there specific proposals presented the EPA that they rejected as not being Practical there were so I reviewed a few of those which are that there could be restrictions on only specific waste streams Disposal restrictions or recycling restrictions EPA also did not consider whether It could use existing technology for example to address exposures from incineration or from wastewater and EPA it's a little bit hard to tell why EPA just said that it would be too expensive and difficult to regulate disposal Because EPA gives no actual analysis of the expense and difficulty with that so there are particular Exposure reduction measures that were given and EPA just did not acknowledge them Or respond to them With respect to that second bucket of arbitrary and capricious Arguments that I want to be sure to highlight today EPA did not analyze the practicability of using cheaper sorting technology to reduce Recycling related exposures and it asserts that it didn't have to consider these technologies at all because they cannot identify DECA BDE Specifically, but that's irrational studies in the record show that these sorting technologies are highly effective at sorting out plastics containing DECA BDE 92% of plastics initially screened with one of these technologies XRX, XRF, X-ray fluorescence Had DECA BDE in it and that's at 5 ER 969 in another study 70% of plastics did that's at 7 ER 1572 and as a result of these this effectiveness and the accessibility of these technologies They're used in the European Union to meet concentration restrictions on DECA BDE and other PBDEs DECA BDE is by far the most dominant congener of PBDE, which is the class to which DECA BDE belongs Both because it was used in much larger quantities historically and also because it was phased out much later So of more than a hundred and fifty million pounds of PBDEs estimated to that were still in use in 2020 95% of that is DECA BDE EPA didn't look at this feasibility analysis that we Submitted to the record that post dated EPA's 2021 rule that found that using these sorting technologies makes recycling restrictions feasible on an industrial scale in the European Union and And because it ignored important considerations on the record that is arbitrary As I mentioned before EPA also ignored evidence of existing widely available Technologies that are not uniformly deployed because they could be that could be used to reduce exposures So it did not consider requiring technology on incineration to reduce exposures or for wastewater discharges and then the third bucket of Arbitrary and capricious arguments is that EPA's exemptions and loopholes are Unexplained and irrational the starkest example of this is with respect to its failure to regulate the land application of sewage sludge EPA simply said that it's not using its section 6 authority at that time without explaining why In rulemaking as Judge Gould has written. It's not enough to assert without meaningful discussion that measures are impracticable Agencies have to rationally explain why they did what they did and here EPA did not do so as I also mentioned before EPA's reason for regulating disposal is Unsupported and irrational EPA claimed that it would be expensive and difficult to engage to adopt any disposal restrictions Because the Resource Conservation and Recovery Act generally regulates solid waste disposal not even DECA BDE Disposal specifically, but it cited no information whatsoever to support its claim and there's no analysis of additional restrictions in the record Unless the court has any questions, I can reserve the remainder of my time for rebuttal. Thank you counsel. Thank you Good morning, may it please the court. My name is Redding Cates for the United States Environmental Protection Agency DECA BDE is a persistent bioaccumulative and toxic substance. That's not in dispute This case is about what Congress authorized EPA to do about it. Here's what EPA did It banned the sale of DECA BDE to the United States DECA BDE cannot be manufactured in this country and it can't be made abroad and imported here In 2021 EPA found that this was the fastest and most effective way to reduce DECA BDE exposures Now petitioners don't dispute that But they wanted EPA to go further To consider the DECA BDE that's already out there in circulation EPA considered their comments urging it to require municipal and other recyclers to find and remove plastic bound for recycling from the stream and Urging EPA to require wastewater treatment plants and landfills to take additional steps beyond the current regulation to reduce DECA BDE exposure But EPA found that requiring municipal recyclers to test Every single piece of plastic that comes in in the recycling stream that they must accept is simply not practical and EPA determined that the cost of testing a piece of plastic for the presence of DECA BDE is prohibitively expensive and Finally no practical means exist For requiring wastewater treatment plants and landfills to remove and segregate the little bit of DECA BDE that they process The parties disagree about what to the extent practical means and this interpretive issue goes a long way to deciding this case As you've already heard EPA interprets practicable to mean achievable feasible Workable and reasonable while also taking into consideration the c2 factors for all subsection a rules Petitioners as you just heard you think that the c2 factors should be incorporated in CH Well, there's a reference I know you're arguing on that but We here we are Post Chevron and we're into Skidmore Why is a matter of statutory interpretation? Should we interpret the section the way you're urging us to? Well, we think under the plain meaning of the statute the specific subsection H Points to a rule under subsection a You go back to subsection a and that those rules have specific requirements now It's true that Congress did not require EPA to do a risk assessment For the for these particular chemicals and that's true But it didn't say it couldn't and I think petitioners asserted that and that's just not the case The statute says that it doesn't have to And so when EPA is looking at structure, it says, all right Well under subsection H, we're supposed to issue a rule under subsection a They go to subsection a and subsection a lays out the requirements c2 under the statute says requirements for a rule and C2 lists those requirements EPA looked at them and said all of these are consistent with The kind of rule we'd be issuing here. They don't speak specifically to a risk assessment There are parts under subsection a that do talk to risk assessments and EPA thought Well, if we're not required to do one and we're not doing them here, then we should look at those But it doesn't mean that the entire subsection a just gets thrown out the window Well, there is the the notion that if Congress intended risk assessments to be done in 6h that it would have put it there and the omission inclusion in one section or subsection and exclusion in another does have some statutory Interpretation consequences, I Agree, your honor. I think though that when you look at subsection a there are parts of it Including c2 that aren't reliant upon having a risk assessment being done and that's why EPA had said well for these We should continue to look at them because it still points us back to subsection a If subsection H had said don't look at a at all This is completely separate process that I think petitioners would have a stronger argument Well part of part of the argument the difference between you is that you claim there's a reasonableness Requirement and they say that's not in the statute My question for you is how do we measure? Reasonableness as we're looking in a petition for review. How do we what metric do we use? Well, I think your honor that it's not simply reasonableness right EPA said and so it is is Feasible EPA said that part of the definition of practical is it has to be feasible, right? But but the definition is reasonably capable of being accomplished feasible in a given situation So I would simply say that those definitions Which are the best definitions of practicable and are most consistent with the way courts have interpreted that word in other cases Speak to you not simply can it be done at all or not simply I think in their reply brief They point to something called economic feasibility, which they mean I think So expensive that it just actually could there isn't enough money to do it and we would say that that that that's drawing the line way too way too high and that if you if you're looking for some Boundary around reasonableness, I think see to the c2 factors provide those But they do include a looking at cost-effectiveness Costs and benefits and again that is consistent with you know The court's opinion in State Farm that even when a statute says you must adopt practical means that was the automatic seat belt case Right, the court said well, you're still right to look at costs and benefits and that's what EPA did here Go ahead. Okay Now I just gave the definition from Black's Law Dictionary and we talked about the c2 factors which are effects on health effects on the environment the benefits of the product and then finally the Economic consequences and then c2 splits out to say the effect on the national economy small businesses costs and benefits and cost-effectiveness In addition to the State Farm case I mentioned earlier there's also Michigan What Supreme Court had a statute Clean Air Act that didn't talk about costs at all and didn't say reasonable But the court held that it was unreasonable to not consider costs and so when EPA is looking at petitioners comments saying you need to place additional burdens on municipalities that Recycle treat wastewater and and have landfills EPA is thinking we need substantial evidence that that can be done and that it's Practicable and when EPA looked at the examples that petitioners gave they didn't find it starting with recycling so EPA found first of all that their widespread ban is going to Massively reduce deca PD in this country by cutting it off at the source And when it looked at testing Petitioners don't dispute that actually testing a piece of plastic for deca PDE is prohibitively expensive You have to take it melt it down and then determine whether it has deca be in or not They pointed to a couple of other Processes that can be used, but I don't think it's exactly as the way they claim First is this sorting method, which is a float and sort but as they admit that takes all PBT chemicals not just deca PDE and deca BDE is the only PBT chemical that is Called out in the study EPA did for this particular section H treatment So EPA cannot use so so wide a tool to separate out They claimed that 92% of the stuff that you would take out of the recycling stream using this method Would be deca BDE, but that's not what their studies actually say The Strakova study that they point to is a study where they went out and on purpose bought about 490 products that they thought were likely to contain deca BDE Recycled deca BDE. So that would be hairbrushes toys, so this was not a What is a cross-section of the recycling stream look like right? It was targeted to find them and when they did that Only nine of the actual products had high enough deca BDE levels that it would be above the de minimis standard That's less than 3% Okay so when he's looking at this, they're like well we're gonna use this sorting mechanism, but it's Maybe only 3% of it is actually going to be deca BDE and that does not Sitting where we are Justify the massive increased cost to put on municipalities for recycling and also for landfills and wastewater treatment plants The other argument they make is about e-waste and they say well you could have you could have segregated specific streams You know, not the main general recycling stream, but what about just e-waste? But the issue there is that their own studies found that It said a Fraction of a fraction actually it said a small fraction of 9% would be a class of BFRs Which is a broader chemical of which deca BDE is one and it said of that a fraction is deca BDE So again a small fraction of a fraction of 9% of e-waste and EPA looked at that and said That isn't worth the cost either and so When They pointed to wastewater treatment plants Another place that they say there are technologies that exist that could have reduced deca BDE exposure in wastewater But when you look at their actual studies What they show is that the technique for reducing deca BDE in wastewater It says this is at ER 1505 The highest removal in all plants was obtained at longer retention time and higher MLSS and advanced treatment process The primary removal mechanism is sorption to solids as opposed to biodegradation therefore optimization of removal from the liquid train will maximize PBDE concentration and solid returns what that means is that the Example they gave of do this in wastewater treatment plants essentially run it through so that it binds more to the solids is that it Would increase deca BDE in the sewage sludge The essential issue that EPA was facing is that these chemicals do not break down and they have to go somewhere and so the solution they offer for wastewater would just make the The problem of sewage sludge even worse and so faced with trying to Create an entire new disposal regime for this one chemical EPA thought The best thing for us to do is to cut it off at the source and to rely on RCRA and the other regimes we have for disposal at this time That's another key point EPA was clear to say that this was not a one-and-done rule If additional information is created comes out in studies We'll take another look at it Well counsel on that point. Yes, sir Appellants argue that EPA failed to consider regulatory options That would be on an all-out ban looking at specific facilities. For example Those with high level of decade BDE such as end-of-life vehicles construction demolition waste electronic waste. Why was that not feasible? Well, as I said earlier taking e-waste as an example when EPA dug into the data what it found is that even amongst e-waste you're looking at a small fraction of a small fraction of 9% of e-waste and so it's needles in a haystack and EPA I think Using its correct interpretation of what practical means said Well, we don't have to chase needles in a haystack under this standard. It produces not worth the squeeze Especially when the ban is going to drive decade BDE levels down and again the rule went into effect in 2021. It's been five years so That's another I guess issue in the petitioners data Is that their studies all predate the ban and we're based on data from years before that When decade BDE was not banned and and was far more pervasive It's It's a panel has no other questions Okay, I think both judges have Okay, go ahead There's cool. Do you have a question? Yes What I'd like to ask counsel now is Does Rick would provide adequate protections from decade BTE Waste disposal Your honor EPA concluded that it did because it provides Regulations for landfills Petitioners do point out that there is some potential for additional exposure But they recommended treating decade BTE as a hazardous substance and when EPA looked at that, it's the same needle in a haystack problem It would be massively expensive for municipalities to convert this to a hazardous waste For very little benefit. And so that's why EPA made the decision not to reclassify it Okay, thank you and counsel would you just Address the decision not to regulate sewage sludge. What's the explanation for that? It's the same as wastewater treatment Testing for the presence of decade BTE is It's so expensive as to be impossible And so and how do we know that? I mean, is there information the record to support that claim? There is it's the same information for testing for recycling that there's the there's no other way to To for a for a wastewater treatment plant to be told by EPA get all the decade BTE out of your wastewater There's no way for a wastewater treatment plant to do that effectively Not in a way that's cost-effective the Examples they gave were just to run the treatment again so that it binds more to the solids But as I mentioned earlier that just increases decade BTE in the sewage sludge Okay, any further questions I think judge Morris may have another one, okay judge Gould No, I have no further question, thank you counsel I'd Like to correct a few things that counsel for the government said first they Argue that testing the incoming stream for recycling would be required in order to do any recycling Restrictions, I think this underscores that they didn't actually Review the evidence in the record that shows that that's often not how it happens in the European Union feasibility report That's at 9 ER 1964 section 11 of that shows that there are sorting methods that Where it's actually tested for these PBD ease is at the end of the process So it's not that you have somebody standing at the beginning of the recycling process Scanning each individual piece of plastic with for example an XRF machine what happens is The waste goes through the process at the end. There are representative samples taken of this pelletized Recycling material and before it's allowed to go into the recycling stream it's tested to determine what the concentration of PBD ease are in that and I think that Government's the government council's explanation underscores that that was not seriously considered below Similarly a lot of what was just said is a lot of post hoc speculation There's simply nothing in the record that shows that EPA engaged in the analysis that council suggests that it did For example EPA did not analyze whether it would be practicable to reduce exposures from sludge And it is true that wastewater treatment does take Deca BDE and put it into the sludge and that is why we said in the administrative proceedings below that it's a requirement for EPA to do something about that concentration in the sludge and we didn't say that EPA needs to treat the sludge that they need to do some sort of Concentration restriction so that that sludge is not going into the environment and going into wastewater and contaminating the wastewater and soil that it's in EPA also did not actually analyze how much exposure reduction would happen from Recycling restrictions EPA suggests that only 9% of e-waste has brominated flame retardants which I think actually underscores how useful this sorting technology that is able to sort technology for Brominated flame retardants would be because it wouldn't mean that the entire recycling stream would be upended It would mean that a small portion of this could be taken out and sent to incineration with With Technologies that are able to reduce exposures from that Unless the panel has further questions I would just emphasize that EPA's rule does not actually meaningfully reduce exposure to Deca BDE EPA says that it's it enough at the upstream stage that it doesn't need to address the vast quantities of Deca BDE that are already in commerce and that have to be disposed of at the end of its useful life we know that over a hundred million pounds are out there and EPA never assessed the practicability of actually addressing the Deca BDE that is currently in commerce Instead it just codified the status quo and it perpetuates ongoing exposures that will result in Irreversible harm to children's brain development and to wildlife that's endangered We asked the court to remand the rule to EPA with deadlines so that EPA can finally comply with the law Are you asking for vacature? We are not asking for vacature. Thank you. Thank you. Thanks counsel Thank all of you for your arguments and for coming out to from the East Coast to argue live That's much appreciated and thank you all for your briefing on this case, which was excellent and very helpful to the court with that We'll take a 10-minute recess
judges: THOMAS, GOULD, Morris